IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LILLAS BECKFORD,           *
                                     *
             Plaintiff,      *
                                     *
v.                                 *         Civil No. L-08-2730
                                   *
MICHAEL J. ASTRUE,      *
*Commissioner of Social Security*,  *
                                   *
             Defendant.     *

**************

## MEMORANDUM

       This is an employment discrimination case.  Pro se Plaintiff Lillas Beckford alleges that

the Defendant, the United States Social Security Administration ("the Agency") failed to

promote her to GS-7 Management Assistant solely because of her Jamaican descent.  Now

pending is the Agency's Motion for Summary Judgment.  Docket No. 44.  After review of the

papers, the Court finds argument unnecessary.  See Local Rule 105.6 (D. Md. 2011).  For the

reasons stated herein, the Agency and Beckford are each entitled to partial summary judgment.

The Court will, by separate Order of even date, GRANT IN PART and DENY IN PART the

Agency's Motion.

## I.      BACKGROUND

       The facts of this case are fully set forth in the parties' papers and the Court's prior

Orders, and need not be comprehensively restated here.  In brief, Beckford, who is of Jamaican

descent, has been employed by the Agency in various capacities since 1987.  In 2001, Beckford

applied for a possible promotion to a "GS-7 Management Assistant I-920" position

("Management Assistant").  She was not selected, and she contends that the sole reason was

discrimination based on her Jamaican accent and heritage.

Beckford was one of six applicants on the "best qualified list" for the Management

Assistant position, four of whom were interviewed.  Each applicant had previously been detailed

to the Management Assistant position on a temporary, rotating basis.  The interviews were

conducted by Judith Hasche, Deputy Office Director for the Agency's Office of Publications

Management, who served as the recommending official for the Management Assistant position.

Mark Graydon, the Office Director, was the selecting official and made the final decision based

on Hasche's recommendation and his own experience with the candidates.  Among other duties,

the Management Assistant would serve as secretary to both Graydon and Hasche, would be

responsible for responding to telephone inquiries from the public, and would greet visitors to the

office.

During the interviews, Hasche asked the candidates preselected questions and took

shorthand notes of their answers.  Hasche then submitted a memorandum to Graydon containing

her written assessment of each candidate.  With regard to Beckford, Hasche's assessment read as

follows:

> Lillas has worked for our component for many years.  Even so, she
> indicated during the interview that there are many things she does
> not know and would have to learn in order to attempt the job –"I
> would need a lot of help from you, Judy."  And while she indicated
> that she was an "articulate communicator" I had to ask her to
> repeat the word "articulate" three times before I understood what
> she said.  In addition, her answers were sometimes off target and I
> had to ask them [*sic*] again, with more explanation.  This was not
> necessary for any of the other candidates.

Def's Mot. to Dismiss Ex. 15, Docket No. 20.

Hasche concluded that that Lisa Venable, an African-American woman, was "[t]he strongest all-around candidate" and recommended that she be selected. Id. Graydon concurred and selected Venable for the position.

Soon thereafter, Beckford filed an employment discrimination complaint with the Equal Employment Opportunity Commission ("EEOC").  In addition to an allegation of discriminatory failure to promote, Beckford lodged claims of harassment and a hostile work environment, the details of which are not relevant here.  An Administrative Law Judge ("ALJ") granted the Agency summary judgment on the harassment/hostile work environment claims.  As to Beckford's non-selection claim, the ALJ found that Beckford was discriminated against on the basis of national origin, but concluded that Beckford would not have been promoted even in the absence of discrimination. On appeal, the Office of Federal Operations[1] affirmed the ALJ's decision.

Beckford then filed a Complaint with this Court on October 16, 2008,[2] and the Agency promptly moved to dismiss. By Memorandum and Order dated June 1, 2010, the Court granted the Motion in part and dismissed the same harassment and hostile work environment claims that had been dismissed by the ALJ.  See Docket Nos. 29 and 30.  The Court ruled, however, that Beckford's failure-to-promote claim could proceed to discovery.  Discovery having completed, the Agency now moves for summary judgment.

---

[1]     The Office of Federal Operations is the appellate branch of the EEOC.

[2]     A district court reviews a Title VII claim de novo, meaning that the administrative rulings are given neither preclusive effect (res judicata or collateral estoppel) nor a presumption of validity. A district court is not required to conduct de novo review of administrative findings or questions of discrimination that are not contested or alleged by the employee. See Pollard v. Grinstead, 741 F.2d 73, 75 (4th Cir. 1984).

I.       **STANDARD OF REVIEW**

The Court may grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also

Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial

judges have "an affirmative obligation" to prevent factually unsupported claims and defenses

from proceeding to trial).  Nevertheless, in determining whether there is a genuine issue of

material fact, the Court must view the facts, and all reasonable inferences to be drawn from

them, in the light most favorable to the non-moving party.  Pulliam Inv. Co. v. Cameo Properties,

810 F.2d 1282, 1286 (4th Cir. 1987).  Hearsay statements or conclusory statements with no

evidentiary basis cannot support or defeat a motion for summary judgment.  See Greensboro

Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).


II.      **ANALYSIS**

Beckford's failure-to-promote claim is subject to the McDonnell Douglas three-step

burden shifting framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03

(1973).  First, absent direct evidence of discrimination, the plaintiff has the burden of

establishing a prima facie case of discrimination.  Id. at 802. In order to establish a prima facie

case of disparate treatment based on a failure to promote, a plaintiff must demonstrate "that (1)

she is a member of a protected class; (2) her employer had an open position for which she

applied or sought to apply; (3) she was qualified for the position, and (4) she was rejected for the

position under circumstances giving rise to an inference of unlawful discrimination."  See Evans

4

v. Techs. Applications & Serv. Co., 80 F.3d 954, 959–60 (4th Cir. 1996).  Establishment of the prima facie case creates a presumption of unlawful discrimination.  See Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Second, if the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to produce evidence that plaintiff's non-promotion occurred for legitimate, nondiscriminatory reasons.  See McDonnell Douglas Corp., 411 U.S. at 802.  Third, if the defendant produces such evidence, the burden then shifts back to the plaintiff, who must prove that the legitimate reasons stated by the defendant "were not its true reasons, but were a pretext for discrimination."  See Burdine, 450 U.S. at 254.

As the Agency concedes, Beckford has established a prima facie case of disparate treatment.  She is a member of a protected class because of her Jamaican origin, she was admittedly qualified for the Management Assistant position, and a person outside of her protected class was selected for the position.

The Agency, however, has put forth overwhelming evidence that its final decision to promote Venable rather than Beckford was made on the basis of legitimate, nondiscriminatory considerations.  For example, Hasche recounted that, during the interview, Beckford answered several questions by stating that she did not know or would have to learn, and admitted that she would "need a lot of help."  See Hasche Aff. ¶4, Def's Mot to Dismiss Ex. 8, Docket No. 20. Hasche also stated that Beckford "did not express logically and clearly some of her responses," that "[s]ome of her answers were off target," and that "[t]hese things did not happen with any of the other candidates."  Id.  By contrast, Hasche's written assessment of Venable states that "[s]he was extremely poised during the interview and impressed me as able to represent the front office professionally both in person to walk-in customers and over the phone.  In my estimation, she would handle pressure very well."  Def's Mot. to Dismiss Ex. 15, Docket No. 20.

Hasche also testified before the EEOC that Venable "did a really good job" while temporarily promoted to the Management Assistant position in the earlier part of 2001 and demonstrated that "she could handle the full range" of the job responsibilities.  EEOC Hearing Tr. at 211:3–20 (June 23, 2003), Def's Mot to Dismiss Ex. 12, Docket No. 20.  Whereas Venable was already fluent in the software that the Management Assistant would need to use, Hasche said that she had "often observed [Beckford] unable to work the software programs that she needed in order to do the job and to have to ask questions." Id. at 148:2–150:16.

Graydon, too, had an opportunity to observe Beckford's job performance during Beckford's temporary rotations to the Management Assistant position.  He found that she lacked knowledge of the organization and was often unable to perform the full range of job duties, to the point where either he or Hasche had to intervene.  Id. at 275:3–19.  According to Graydon, Beckford had to be walked through use of the necessary software on multiple occasions, and regularly misrouted messages and visitors.  Id. at 301:11–25, 275:12–16, 279:18–280:5.  Thus, Graydon testified that he would not have hired Beckford even if Hasche had ultimately recommended her for the position.  Id. at 313:6-11.  As to Venable, Graydon characterized her as a "self-starter" who "picked up on the software quickly, made some improvements to . . . some of the office procedures, [and] needed very little management oversight." Id. at 302:10–16.  Graydon rated Venable's performance on her temporary rotations as "exceptional." Id. at 302:8.

Beckford has offered little evidence to rebut the Agency's proffered nondiscriminatory reasons, other than her own assessment that she was the best qualified applicant.  Beckford relies on her long experience with the Agency and points out that she was twice promoted to the Management Assistant position: once for several months in 1998, and again in 2000 when the regular Management Assistant was on leave.  The record establishes, however, (and Beckford

does not dispute) that such temporary promotions were given to all secretaries in the Office of Publications Management on a rotating basis.  Beckford also submits that she has associate degrees in general education and business administration, and that she received several workplace awards.  This information is of limited probative value.  A college degree was not a requirement for the job, and some of the awards Beckford received were either given to all secretaries who covered for the regular Management Assistant or were awarded for non-performance-related achievements such as canvassing for savings bonds or soliciting charitable donations to the Combined Federal Campaign.  Moreover, Venable also received multiple awards, several of which were for outstanding job performance.  In sum, Beckford has failed to come forward with sufficient evidence from which a reasonable jury could find that the Agency's stated reasons for its decision to deny her the promotion to the Management Assistant position were pretextual.

Unfortunately for the Agency, however, this does not end the inquiry.  In the case of Price Waterhouse v. Hopkins, 490 U.S. 228, 243 (1989), the Supreme Court held that a defendant could avoid a finding of liability by proving by preponderance of the evidence that it would have made same decision even if it had not taken the plaintiff's protected characteristic into account.  The logic behind this result is that the employee has suffered no cognizable harm and so is entitled to no relief.

In passing the Civil Rights Act of 1991, however, Congress legislatively overruled Price Waterhouse and amended the Civil Rights Act to provide that a plaintiff need only show that illicit discriminatory animus was one motivating factor in the employer's decision, "even though other factors also motivated the practice."  See 42 U.S.C. § 2000e-2(m).  In these so-called "mixed cases," the Plaintiff is still entitled to limited damages.

> Once such a showing has been made, the employer cannot escape
> liability.  However, through use of a limited affirmative defense, if
> an employer can demonstrate that it "would have taken the same
> action in the absence of the impermissible motivating factor," it
> can restrict a plaintiff's damages to injunctive and declaratory
> relief, and attorney's fees and costs.

Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 317 (4th Cir. 2005) (quoting 42

U.S.C.A. § 2000e-5(g)(2)(B)).

As outlined above, the Agency is entitled to summary judgment on its decision to

promote Venable instead of Beckford.  The record clearly forecloses any argument that Beckford

was the better qualified candidate.   This means that Beckford cannot recover money damages,

and the Court cannot force the Agency to promote her.  This conclusion does not mean that

Beckford was a poor employee or in any way denigrate her service to the Agency.  There was

only one opening for the Management Assistant position, and no reasonable jury could conclude

that Beckford was more qualified than Venable.

The sole litigable issue in this case is, therefore, whether the Agency impermissibly took

Beckford's national origin into consideration in making its assessment of her.  This Court has

recognized that "[d]iscrimination based on manner of speaking can be national origin

discrimination.  To that end, the EEOC's regulations provide that national origin discrimination

encompasses the denial of employment opportunity because an individual has the linguistic

characteristics of a national origin group."  E.E.O.C. v. Orkin Exterminating Co., 63 F.Supp.2d

684, 692 (D. Md. 1999) (citations and quotations omitted).

Of course, "there are some positions for which the ability to communicate effectively is a

legitimate consideration."  Shieh v. Lyng, 710 F. Supp. 1024, 1032 (E.D. Pa.1989).

"Accordingly, an adverse employment decision may only be based upon an employee's accent if

that accent 'interferes materially with job performance.' " <u>Orkin Exterminating Co.</u>, 63 F. Supp.
2d at 692 (quoting <u>Fragante v. City and Cnty. of Honolulu</u>, 888 F.2d 591, 596 (9th Cir. 1989)).

Based on the record, the Court finds that a trial is necessary to decide whether and to
what extent the Agency took Beckford's accent into account.  A discrepancy exists between the
testimony of Hasche and Graydon.  Hasche did consider Beckford's accent in making her
recommendation to Graydon.  This consideration was legal and proper, because Hasche believed
that Beckford's accent had a negative impact on her ability to communicate.  In an affidavit
explaining the reasons for her recommendation, Hasche states that oral communication is an
important part of the Management Assistant position, and that "Ms. Beckford has an accent and
is sometimes hard to understand."  Hasche Aff. ¶4.  Hasche also affies that she has received
complaints from callers who had trouble communicating with Beckford.  <u>Id.</u>

Graydon, on the other hand, claims that he did not consider Beckford's accent.  Graydon
testified before the EEOC that he interpreted Hasche's comment about Beckford's repetition of
the word "articulate" to relate, not Beckford's accent, but to her communication skills in general
and her "difficulty in conveying what she meant."  EEOC Hearing Tr. at 293:8–13; 294:14–16.
Because Hasche's memorandum was part of the record that Graydon considered in making a final
decision, however, a reasonable jury could find that Graydon did, in fact, consider Beckford's
accent.  Because Graydon, unlike Hasche, "did not see [Beckford's] accent as affecting her work
performance," <u>id.</u> at 293:13–14, a reasonable jury could also find that Graydon's consideration of
Beckford's accent was improper under Title VII.

### III.      CONCLUSION

Because the Agency would have made the same employment decision that it did absent any impermissible consideration of Beckford's Jamaican accent, it is entitled to partial summary judgment.  As outlined above, other disputed questions of fact remain for trial.

The prospect of a trial raises a cost/benefit concern for the parties, however.  The Court is reluctant to require Beckford to assume the burden of preparing for and representing herself at trial when the potential recovery personal to her would be limited to declaratory relief and an award of costs.

The issue of potential injunctive relief remains, but the Court would be strongly inclined to order the same relief ordered by the OFO, to wit: (1) EEO training in national origin discrimination and (2) posting of an EEO notice in the Agency's Baltimore facility for a period of 60 days.  Moreover, the Court would not order duplication of these efforts to the extent that the Agency has already complied with the OFO's order.  Because the Court is awarding the Agency partial summary judgment, Beckford is not entitled to the relief she has requested in her Amended Complaint ($750,000 in damages and promotion by three grade levels).  Because Beckford is representing herself, there would be no award of attorney's fees.

Because of the limited relief available to Beckford and the burden that trial would place on her, before scheduling further proceedings in this case the Court will refer the case to a United States Magistrate Judge for settlement discussions.


Dated this 19th day of March, 2012.


_____/s/_____

Benson Everett Legg
United States District Judge